## DRURY *v.* GORRELL.

ESTOPPEL; CONTRACTS; STATUTE OF LIMITATIONS; EVIDENCE; INSTRUCTIONS TO JURY; INTEREST.

1. In an action against an executor for a breach of an alleged contract, whereby it is claimed by the plaintiff that the testatrix, the plaintiff's aunt, agreed to make a will in his favor if he and his wife would make their home with the testatrix and care for her during her lifetime, statements made by the plaintiff to his aunt in response to questions by her that he had no claim against her, and that she owed him nothing, and failure by the plaintiff to list any claim against her in bankruptcy proceedings, wherein he was discharged as a bankrupt, before her death, will not work an estoppel against the plaintiff to assert his claim, in the absence of anything to show that such statements and such failure caused his aunt to alter or change her position to her prejudice. (Citing *Bowen* v. *Howenstein,* 39 App. D. C. 585.)

2. An action against an executor for an alleged breach of contract between testatrix and plaintiff whereby, in consideration of the services of the plaintiff, the testatrix agreed to make a will in his favor, instituted within three years after the death of the testatrix, when the plaintiff first learned that she had not fulfilled her contract, and within five months after the grant of letters testamentary upon her estate, is not barred by the statute of limitations. (Citing

sec. 1266, D. C. Code [31 Stat. at L. 1389, chap. 854, as amended by 32 Stat. at L. 542, chap. 1329.])

3. In an action against an executor for alleged breach by his testatrix of a contract with the plaintiff, in which action the statute of limitations is pleaded as a defense, it is not error on the part of the trial court to admit in evidence, on the offer of the plaintiff, a certified copy of the order of the probate court admitting the will of the testatrix to probate, as tending to show when the statute began to run.

4. It is not error for the trial court, in an action against the executor to recover damages for an alleged breach of contract between the testatrix and plaintiff, whereby the testatrix agreed to make a will in the plaintiff's favor if he would care for her during her lifetime, to grant a special instruction to the jury asked by the plaintiff to the effect that they might, in their discretion, add to any sum they might find the plaintiff entitled to, interest from the death of the testatrix to the time of the trial. (Following *Burke* v. *Claughton*, 12 App. D. C. 183.)

No. 2893.    Submitted February 10, 1916.    Decided March 6, 1916.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action of assumpsit.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment entered upon a verdict in favor of James O. Gorrell, the plaintiff below, appellee here, against Samuel A. Drury, the defendant below, as executor of the estate of Amelia J. Lyle, deceased, appellant here, in an action of general assumpsit.

The case was tried under an amended declaration filed on February 20, 1914, to which the pleas of non assumpsit, nil debit, and the statute of limitations were interposed.

The original declaration, also in general assumpsit, was filed on August 27, 1912, the day on which the action was instituted.

Attached to the amended declaration was a bill of particulars, or, as it is called, "particulars of demand," in which are particularized the various items making up the amount claimed by

the plaintiff, but all of these, save two, were withdrawn by the court from the consideration of the jury. The two that remained were (1) an item of table board for the testatrix of the defendant, Mrs. Amelia J. Lyle, from March 10, 1904, to April 20, 1908, forty-nine months at $25, totaling $1,225; and (2) an item for services rendered in nursing and caring for the testatrix from March 10, 1904, to April 20, 1908, amounting to $11,320, with a credit under date of December, 1907, of $50 represented by a check; and on the balance interest is claimed at the rate of 6 per cent from July, 1910.

From the testimony adduced on behalf of the plaintiff, it appears that his aunt, Amelia J. Lyle, was, prior to March, 1904, a resident of the city of Washington, District of Columbia, at No. 216 Fourth street, S.E., and that the plaintiff was a resident of Harford county, Maryland, engaged in the business of farming and canning. That during the year 1903, he was doing a good business by means of which he was able to make a living for himself and wife; that sometime prior to March, 1904, his aunt requested him to come to Washington and make his home with her, stating at the time that if he would do so and remain with her the balance of her days and care for her "she would make her will in his favor, and that he would be well paid for his services." That, thereupon, the plaintiff sold out his canning business, paid off his debts with the exception of about $300, and on March 10, 1904, came to Washington with his wife, and they took up their home with his aunt. That at that time the aunt needed attention, but she went about alone sometimes and sometimes with someone; that she was not in bed a great part of the time, but needed waiting upon and help in getting up and down stairs. The plaintiff always was ready to do anything he could for her when he was not working, and always helped her up to bed every night and down stairs in the morning, and his wife waited upon the aunt and administered to her wants. That in the month of May, 1907, the aunt had a stroke of paralysis, which confined her to her bed for about two weeks, and that after this time she grew

weaker, and was not capable of getting about, and less able to wait on or handle herself.

That on or about December 12, 1907, she suffered another severe attack of paralysis, which continued until April, 1908, when she was taken to Providence Hospital. That during the first two or three weeks of this illness, the plaintiff and his wife ministered to her wants without any assistance from the outside, when nurses were employed to take care of her, and they remained with her until she went to a hospital in April, 1908. The services of these nurses were paid for by the aunt.

That during the time the plaintiff and his wife remained at the aunt's house, which was from March 10, 1904, to sometime in April, 1908, they kept the house, provided the meals, paid the gas, coal, and water bills, and the plaintiff's wife did the cooking, with the assistance of a servant, whose wages the plaintiff paid, and that the aunt paid none of the expenses of the household. That the aunt was an old lady, and, after suffering the first stroke of paralysis mentioned, was feeble, required a great deal of attention, and was never left alone in the house by the plaintiff and his wife at any time; and that if both did go out, they always left someone in the house with the aunt.

When in April, 1908, the aunt was taken to the hospital, the plaintiff was told that she desired possession of the house, and wished him and his wife to move therefrom, which they did within two days after the aunt went to the hospital, and never lived with her thereafter, and in fact only saw her twice from that time until the time of her death, which occurred on July 10, 1910. That during the period that the plaintiff and his wife lived with the aunt, they had the entire use of her house, which was well furnished, with the exception of the room occupied by the aunt, and they paid no rent therefor. That during this period the plaintiff was employed by an insurance company, and earned about $100 a month, using his earnings in running the house, with the exception of the amount required in providing clothing for himself and his wife.

There was also testimony offered by the plaintiff tending to show that the charge for the board of his aunt was fair and

reasonable, as was also that made for nursing and caring for her, the basis for the latter charge being the value of the services of two trained nurses at $50 a week, less $30 a month, which he allows as a credit as for the rent of the house during the period of his residence therein.

The plaintiff also offered testimony showing that by the aunt's will, dated May 20, 1908, a legacy of $50 only was bequeathed to the plaintiff.

The plaintiff also put in evidence a certified copy of the order of the probate court of this District, passed on the 22d of March, 1912, admitting the aunt's will to probate; and the admission of this piece of evidence, which went in under the defendant's objection, forms the basis of the first exception taken by the defendant.

The evidence on behalf of the defendant tended to show that the aunt was a woman of refinement and intelligence, and a competent business woman; that up to the time of her illness in December, 1907, she was in good physical condition and capable of and did attend to her business alone; that she did have a stroke of paralysis in May, 1907, from which she recovered, but was not thereafter as strong physically as she had been prior thereto; that prior to her illness in December, 1907, she did not require constant attention; that in the year 1904 she went to Europe, traveling with a friend, the trip occupying two months, and that upon her return she went on a visit to Maryland for about two weeks, and in the fall of that year went to Missouri and Illinois for about two months. That from March, 1904, until April, 1908, she would leave the city several times during each year, and went in September, 1907, to the Jamestown Exposition with a friend, and upon her return went on a visit to Philadelphia. That she attended to her business, the investment of her moneys, and the like, until the year 1910.

That the plaintiff and his wife lived at his aunt's home until April, 1908, when she was taken to the hospital, at which time, it being made known to the plaintiff that his aunt desired possession of her house, he and his wife left the same, and never lived there after that period.

The defendant further offered evidence tending to prove that subsequent to the death of the aunt, the plaintiff contested her will on the ground that she was mentally incompetent to make a will, and also that the execution thereof had been procured by undue influence, but that the will was sustained by the verdict of a jury.

That the plaintiff never presented any claim to the deceased in her lifetime, never filed any in the probate court, nor presented any claim or account against the estate of his aunt to her executor, never advised him of the existence of any claim on his part, and never made any demand upon the defendant for the payment of any claim or account until the institution of this action, prior to which time the defendant never heard of the existence of any claim on the part of the plaintiff against his aunt's estate.

The defendant also offered evidence tending to show that the item of credit in the plaintiff particulars of demand was a check given to the plaintiff by his aunt on December 24, 1907, to be cashed for her; that he cashed the check, took the money to her, and that she told him to keep it, which he did, and spent it on her.

The defendant also offered evidence tending to show that the arrangement under which the plaintiff and his wife went to life with the aunt was that the plaintiff should have rent free, the entire use of the aunt's home, in consideration of which he was to provide her with board and pay the heating, lighting, and wash bills.

The defendant also offered in evidence a letter dated March 18, 1907, addressed by the aunt to the executors of her will, wherein, among other things, she expressed the fear that, after she was gone, there might be some misstatement in regard to how and when and on what terms the plaintiff and his wife came to live with her, and stating in substance the arrangement to be as last shown above by the evidence of the defendant; and that intimations had been given on the part of the plaintiff's wife that claims for extra work would be made, and solemnly declared that she had never required any extra care at the hands

of the plaintiff or his wife; that there had been no other business transactions between them or promises of any kind made to either of them; and that they were at liberty to leave the premises at any time.

The defendant further offered in evidence the testimony of the plaintiff, given at the trial of the will contest, hereinbefore referred to, and at a previous trial of the present action, to the effect that on or about May 19, 1908, shortly after his aunt had returned from the hospital, she sent for him, and in the presence of a Dr. Vincent asked him if she owed him any money, to which he replied, "You don't owe me anything;" and his aunt then asked if he had any bill against her, to which he replied that he had not; that his aunt thereupon requested him to put these statements in writing, but he declined to do so, saying that he would sign nothing. That plaintiff admitted that he so testified at such trials, but claimed that he also testified at the previous trial of this action that at that time he told his aunt that she did owe him money, but that he could not recall whether he so testified at the trial of the will-contest case. That the record of plaintiff's testimony in the will case and in the previous trial of this action was offered in evidence, and showed that he did not testify at either of the two trials mentioned, that he told his aunt that she owed him money.

That on cross-examination, plaintiff admitted that on December 13, 1907, he filed in the supreme court of the District of Columbia a voluntary petition in bankruptcy, wherein he made oath that the debts due and owing by him aggregated $2,549.50, that his only asset was wearing apparel of the value of $20, which he claimed as exempt; that in response to the requirement of the bankruptcy schedules that he list all un-liquidated claims of every nature at their estimated value, he made oath that he had none; that the schedules of liability attached to his petition, showed, among other debts, notes aggregating $2,075.42, which included a judgment for $500 confessed by the bankrupt in Harford county, Maryland, in 1903; that no trustee was elected or appointed, and that plaintiff obtained his discharge in bankruptcy on March 21, 1908.

It further appears by the bill of exceptions that at the close of the testimony, the defendant moved the court to direct a verdict for the defendant upon the grounds (1) that the claim upon which the plaintiff had brought his action was barred by the statute of limitations, and (2) that by reason of the statements of the plaintiff to his aunt in May, 1908, as set forth in the defendant's testimony, the plaintiff was estopped from setting up the claim asserted by him in this action; and that by reason of the facts set forth in the bankruptcy proceedings, as brought out in the testimony, he could not be heard to assert his claim, which is the basis of this action.

The court overruled the motion, and this action is the basis of the second exception taken by the defendant.

In an instruction to the jury given at the plaintiff's request, they were told that they might in their discretion add to any sum that they might find the plaintiff was entitled to, interest on the sum from the date of the death of the aunt in July, 1910, to the date the instruction was given; and to this part of the instruction the defendant objected, and, the objection being overruled, took his exception thereto.

A number of instructions to the jury were requested by the defendant. Some of these were granted and others refused. To the refusal of the court to grant defendant's instructions numbered 3 and 8, exception was taken. These two instructions are as follows:

"3. You are instructed that the plaintiff is not entitled to recover in this action for any services rendered by his wife in caring for and nursing said Amelia J. Lyle, deceased."

"8. You are instructed that if you find from the evidence that said Amelia J. Lyle, deceased, in her lifetime entertained the fear that after her death there would be presented by the plaintiff against her estate a claim such as is asserted by him in this case, and that, entertaining such fear, the deceased did, in the month of May, 1908, send for said plaintiff, and that said plaintiff came to see said deceased, and that thereupon said deceased asked said plaintiff if he had any bill against her, and said plaintiff replied that he had not, and further asked said

plaintiff if she owed him any money, and that said plaintiff replied that she did not owe him anything, and that said deceased, relying upon said statements by plaintiff, took no action with respect to said apprehended claim or indebtedness, then your verdict should be for the defendant."

The errors assigned on this appeal are to the admission in evidence of the certified copy of the order of the probate court, admitting the aunt's will to probate; in overruling the motion to direct a verdict for the defendant; in granting so much of the instruction requested by the plaintiff as told the jury they might allow interest; and in refusing to grant the 3d and 8th instructions requested by the defendant.

*Mr. Samuel Maddox* and *Mr. H. Prescott Gatley,* for the appellant, in their brief cited:

2 Abbott, Trial Brief, 2d ed. p. 1490; *Bowen* v. *Howenstein,* 39 App. D. C. 585, 587; *Baker* v. *Pratt,* 15 Ill. 568; *Bonesteel* v. *Van Etten,* 20 Hun, 468; *Banks* v. *Howard,* 117 Ga. 96; *Carpenter* v. *Hayes,* 153 Pa. 432; *Casco Bank* v. *Keene,* 53 Me. 103; *Chesapeake & N. R. Co.* v. *Speakman,* 63 L.R.A. 193; *Chantland* v. *Sherman,* 148 Iowa, 352; *Clark* v. *Mayfield,* 3 Cranch, C. C. 353; *Childress* v. *Grim,* 57 Tex. 56; Code, § 1266; *Dickerson* v. *Colegrove,* 100 U. S. 578; *Dezell* v. *O'Dell,* 3 Hill, 215; *Downs* v. *Downs,* 23 App. D. C. 381; *Dodge* v. *Signor,* 18 Tex. Civ. App. 45; *Doyle* v. *St. James Church,* 7 Wend. 179; *De Witt* v. *De Witt,* 46 Hun, 258; *Edwards* v. *State,* 184 Mass. 317; 13 Enc. Pl. & Pr. p. 233; 7 Enc. U. S. Rep. p. 1045, B. 2; *Graham* v. *Graham,* 34 Pa. 475; *Griggs* v. *Ganford,* 50 Ill. App. 172; *Henry* v. *Rowell,* 64 N. Y. Supp. 488; *Hughes* v. *Lane,* 25 Tex. 356; *Hawley* v. *Dawson,* 16 Or. 349; *Horn* v. *Cole,* 51 N. H. 287; *Holman* v. *Omaha, &c., R. Co.* 63 L.R.A. 395; *Hall* v. *McCann,* 51 Md. 345; *H·d* v. *Frellsen,* 20 La. Ann. 577; *Harding* v. *Durand,* 138 Ill. 515; *Johnson* v. *District,* 1 Mackey, 429; *Kirk* v. *Hamilton,* 102 U. S. 68; *Leather Mfrs.' Bank* v. *Morgan,* 117 U. S. 96, 108; *Lordly* v. *Smith,* 32 W. Va. 387; *McClellan* v.

*Kennedy,* 8 Md. 230; *McDowell* v. *McDowell,* 31 L.R.A.(N.S.) 176; *Morgan* v. *Railroad Co.* 96 U. S. 720; *Miller* v. *McIntyre,* 6 Pet. 61; *Murray* v. *Ware,* 4 Ky. 325; *Pardo* v. *Pardo,* 26 La. Ann. 364; *Pratt* v. *Vather,* 9 Pet. 405; *Purcell* v. *Fry,* 19 Hun, 595; *Redfield* v. *Ystalyfera Iron Co.* 110 U. S. 177; *Redfield* v. *Bartels,* 139 U. S. 694; *Smith* v. *Boston Elev. R. Co.* 184 Fed. 387, 389; 2 Smith, Lead. Cas. pt. 2, p. 859; *Smith* v. *Newton,* 38 Ill. 235; *Scanlon* v. *Walshe,* 81 Md. 118; *Snyder* v. *Neal,* 129 Mich. 692; *Schempp* v. *Beardsley,* 83 Conn. 34; *Switzer* v. *Noffsinger,* 82 Va. 515; *State Bank* v. *Conway,* 13 Ark. 344; *Stephens* v. *Phœnix Bridge Co.* 139 Fed. 248; *Swinnerton* v. *Argonaut Land & Development Co.* 112 Cal. 375; *Shipman* v. *State,* 44 Wis. 458; *Union Mut. L. Ins. Co.* v. *Glee,* 123 Ill. 57; *Union Bank* v. *Planters Bank,* 9 Gill & J. 439; *Union P. R. Co.* v. *Wyler,* 158 U. S. 285; *United States* v. *Sanborn,* 135 U. S. 271; *Womack* v. *Womack,* 83 S. W. 937; *Walker* v. *Bank of Miss.* 7 Ark. 503; *Van Rensselaer* v. *Kearney,* 11 How. 297, 326; *Voorhees* v. *Olmstead,* 3 Hun, 744.

*Mr. W. Gwynn Gardiner,* for the appellee, in his brief cited:

*Wilson* v. *Keeler,* 9 Ill. App. 347; 2 Kent, Com. 437; *Young* v. *Power,* 41 Miss. 197; *Re Gregg,* 11 Misc. 153, 32 N. Y. Supp. 1103; *Gray* v. *Barton,* 55 N. Y. 68; *Fasset's Appeal,* 167 Pa. 448; 20 Cyc. 1208; 16 Cyc. 725, 741; *Pabst Brewing Co.* v. *Schuster* (Ind. App.) 103 N. W. 951; *Advance Thresher Co.* v. *Fishback,* 157 Ky. 427; *Pouder* v. *Colvin,* 120 Mo. App. 55; *Yellowstone County* v. *First Trust & Sav. Bank,* 46 Mont. 439; *Kohlberg* v. *Aubrey & Semple,* 167 S. W. 828–831; *Cannot* v. *Baker,* 81 S. W. 478; *Keelin* v. *Potlewait Co.* 259 Ill. 130; *Walnut Hill Bank* v. *National Reserve Bank,* 139 N. Y. Supp. 117; *Leroy* v. *Steamboat Co.* 165 N. C. 109–118; *Krebs* v. *Blackenship,* 80 S. E. 948; *Terry* v. *McClug,* 104 Va. 599; *Wright* v. *Fox,* 103 N. E. 422; *Luch Constr. Co.* v. *Russell County,* 115 Va. 335; *Pendleton* v. *Rickey,* 33 Pa. 58, 63; *Medles* v. *Hainface,* 11 Ill. App. 303; *Heffner* v. *Van Dolah,*

57 Ill. 520–525; *Re Dreuil & Co.* 205 Fed. 573–576; *Re Cox,* 199 Fed. 952; *Brandt* v. *Virginia Coal & I. Co.* 93 U. S. 326; *Sturn* v. *Baker,* 150 U. S. 312; *Henshaw* v. *Bissell,* 18 Wall. 271; *Bowen* v. *Howenstein,* 39 App. D. C. 585; D. C. Code, 1184, 1185, sec. 1266; *Neubeck* v. *Lynch,* 37 App. D. C. 576; *District of Columbia* v. *Frazer,* 21 App. D. C. 154; *Howard* v. *Chesapeake & O. R. Co.* 11 App. D. C. 330–336; *Texas & P. R. Co.* v. *Cox,* 145 U. S. 593, 604; *Tuohy* v. *Trail,* 19 App. D. C. 79; *Whitney* v. *Hay,* 15 App. D. C. 164; *Brown* v. *Sutton,* 129 U. S. 238; *Townsend* v. *Vanderwerker,* 160 U. S. 171, 184; *Heery* v. *Reed,* 80 Kan. 380, 102 Pac. 846; *Foss-Schneider Brewing Co.* v. *Bullock,* 59 Fed. 83; *Ga Nun* v. *Palmer,* 202 N. Y. 483, 36 L.R.A.(N.S.) 922; *Burke* v. *Claughton,* 12 App. D. C. 182; *District of Columbia* v. *R. Co.* 8 App. D. C. 322; *Baker* v. *Cummings,* 8 App. D. C. 515.

Mr. Justice SIDDONS of the Supreme Court of the District of Columbia, who sat with the Court in the hearing and determination of the appeal, in the place of Mr. Chief Justice SHEPARD, delivered the opinion of the Court:

The defendant's 3d and 8th instructions, quoted above, involve the various aspects of the grounds of the defendant's motion for a directed verdict in his favor, and will therefore be considered in connection with this motion.

The two grounds upon which the motion for a directed verdict is based are: (1) The alleged bar of the plaintiff's claim by the statute of limitations; and (2) that by reason of the statements of the plaintiff made to his aunt in May, 1908, and of the facts set forth in the bankruptcy proceeding, as appears in the testimony, he could not be heard to assert his claim upon which his action was brought. We will consider this last ground of the motion first.

The contention of the appellant on this point is based upon the doctrine of estoppel. He urges that under the circumstances of the making of the alleged statements by the plaintiff to his aunt in May, 1908, and of the statements made by him in his

petition in bankruptcy and in one of the schedules attached thereto, a case of estoppel is made out, and a large part of the defendant's brief is devoted to a discussion of the doctrine and the citation of authorities claimed to bear out the position that the defendant takes in this regard.

The argument does not convince, and is founded upon a misconception of the doctrine itself. An estoppel *in pais* operates when a person, either by his language or conduct or both, misleads or induces another to alter or change his position in some respect, or influences his conduct in such a way so that it would work an injustice to the latter if the former were permitted thereafter to show that the language used or conduct exhibited by him was untrue or misleading. *Sturm* v. *Boker,* 150 U. S. 322, 37 L. ed. 1098, 14 Sup. Ct. Rep. 99.

This court, speaking through Mr. Justice Robb in the case of *Bowen* v. *Howenstein,* 39 App. D. C. 585, Ann. Cas. 1913E, 1179, stated the doctrine thus: "The doctrine of estoppel *in pais* is founded upon principles of morality, and is intended to subserve the ends of justice. 'It is a doctrine, therefore, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party when in conscience and honesty he should not be allowed to speak.' *Van Rensselaer* v. *Kearney,* 11 How. 297, 326, 13 L. ed. 703, 715,"—and repeats the language of the Supreme Court found in *Henshaw* v. *Bissell,* 18 Wall. 255, 271, 21 L. ed. 835, 840, to this effect: "An estoppel *in pais* is sometimes said to be a moral question. Certain it is that to the enforcement of an estoppel of this character, such as will prevent a party from asserting his legal rights to property, there must generally be some degree of turpitude in his conduct which has misled others to their injury. Conduct or declarations founded upon ignorance of one's rights have no such ingredient, and seldom work any such result."

A glance at the statements alleged to have been made by the plaintiff, upon which estoppel is predicated by the defendant, shows how far short they fall of the principles of the doctrine thus announced. The statements said to have been made by the

plaintiff to his aunt in May, 1908, did not induce or lead her to take any action or refrain from taking any, nor, so far as appears in the testimony of the case, did they influence her conduct in any way. It is true that, in the defendant's brief, it is suggested that, if the plaintiff had not made the statements claimed by the defendant to have been made by him to his aunt on the occasion in question, she "doubtless would have taken steps to protect herself and her estate, even to the extent of perpetuating the testimony of witnesses by means of appropriate proceedings."

But this is surmise and speculation on the defendant's part, and it certainly is not apparent what steps she could have taken to protect herself and her estate; and it is not to be overlooked that the defendant had the benefit of such testimony as he saw fit to develop as to what occurred in this interview between the plaintiff and his aunt, and that testimony was not developed in as satisfactory a way as it might have been; for a witness, a Dr. Vincent, said by the defendant to have been present at this interview, was not put upon the stand to testify to what occurred, nor does any explanation appear in the record as accounting for his failure to do so.

At the most, in the light of all of the testimony on this subject, and taking the most unfavorable view of it against the plaintiff, it amounts to a contradiction of the plaintiff, or an admission against interest, and of this contradiction or admission against interest the defendant had as full a benefit before the jury as he could expect from the method he pursued in establishing it. At most, it went to the weight of the plaintiff's testimony or to his credibility, questions exclusively for the jury to pass upon.

So far as the statements appearing in the plaintiff's petition in bankruptcy and in the schedule attached thereto are concerned, it is enough to point out that there is nothing in the testimony to show that they were brought to the attention of the plaintiff's aunt, much less that she acted upon them or that her conduct was influenced thereby.

There was no error committed by the court in overruling the

motion for a directed verdict in favor of the defendant upon this ground.

This brings us to the other and first ground of the motion, which is that the claim sued upon by the plaintiff was barred by the statute of limitations.

The theory of the defendant in support of this ground of the motion is that the cause of action, if any, accrued to the plaintiff on that day in April, 1908, when, responding to the desire of his aunt made known to him, the plaintiff and his wife moved from her house and never lived with her thereafter. This action of his, the defendant insists, amounted to a recognition by the plaintiff of the termination on the part of his aunt of the contract between them.

This argument is based upon a mistaken view of the contract. That contract, as the jury must have found by its verdict, was in substance that, if the plaintiff came to Washington and made his home with the aunt and remained with her the balance of her days and cared for her, she would make a will in his favor, and that he would be well paid for his services. When her will was offered for probate, after her death in July, 1910, it appeared that she had bequeathed a legacy of $50 only to him, and this will appears to have been executed on May 20, 1908, in the month following the going to the hospital of the aunt and testatrix, and the leaving by the plaintiff and his wife of the aunt's house at her request, this will being the subject of a contest which was not finally disposed of until March 22, 1912, when the will was duly admitted to probate.

During the period of contest of the will, there was no legal representative of the estate of the aunt against whom an action could have been brought. Besides this, section 1266 of the Code of Law for the District of Columbia [31 Stat. at L. 1389, chap. 854, as amended by 32 Stat. at L. 542, chap. 1329] provides:

"Sec. 1266. Suits against decedents' estates.—In suits against the estate of a deceased person, in computing the time of limitation the interval, not exceeding two years, between the death of the deceased and the granting of letters testa-

mentary or of administration shall not be counted as part of said time of limitation."

At the earliest, it was not until the aunt died on July 10, 1910, that the plaintiff knew that she had not carried out her contract to make a will in his favor. His action was instituted on August 27, 1912, a little more than two years and one month after the death of his aunt, and if there is deducted from this period of time, the time consumed in the contest over the will, a period in the language of the provision of the Code quoted above, "not exceeding two years," the action was instituted when only a fraction over five months of the period of limitations under such circumstances had elapsed. There is no merit in this ground of the defendant's motion.

For the foregoing reasons there was no error committed in overruling the motion for a directed verdict in favor of the defendant and in the refusal to grant the defendant's third and eighth prayers for instructions.

There was plainly no error in admitting in evidence the certified copy of the order of the probate court of March 22, 1912, admitting the will of the plaintiff's aunt to probate. Although a copy of this order does not appear in the record before us, it is quite fair to infer that it contained, as is usual in such orders, the grant of letters testamentary to the executor named in the will, the present defendant, and it fixes the expiration of the time saved from the running of the statute of limitations by section 1266 of the Code.

Besides this, the plaintiff may have considered it desirable to meet the claim of the bar of the statute based upon the defendant's theory that the cause of action accrued on April 20, 1908, when the plaintiff and his wife, at the request of the aunt, left her home. From that date to the date of the institution of this action on August 27, 1912, four years and four months and a few days elapsed, and deducting from that time the period from the date of the death of the testatrix to the date when the will was admitted to probate, will bring the institution of the action within the three-year period. There was

no error in admitting this copy of the order of the probate court in evidence.

The last assignment of error is addressed to so much of the plaintiff's prayer for instructions as left to the discretion of the jury to add to such principal sum as they might find the plaintiff entitled to, interest from the date of the aunt's death to the date when the instruction was given.

It is enough to say that the court applied the correct rule in respect of this matter. *Burke* v. *Claughton,* 12 App. D. C. 183.

Finding no error in the record, the judgment must be affirmed, with costs, and it is so ordered.                              *Affirmed.*